[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 14, 2005
THOMAS  K. KAHN
CLERK

_____

No. 03-15517

_____

D.C. Docket No. 02-00012CV-3- LAC/MCR

SEAY OUTDOOR ADVERTISING, INC.,

Plaintiff-Appellant,

versus

CITY OF MARY ESTHER, FLORIDA,
JOHN LULUE, as an individual and in his
capacity as City Manager, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Florida

_____

**(January 14, 2005)**

Before EDMONDSON, Chief Judge, PRYOR and FAY, Circuit Judges.

FAY, Circuit Judge:

In this sign ordinance case, Plaintiff-Appellant Seay Outdoor Advertising, Inc. ("Seay") filed a complaint challenging as unconstitutional the repealed version of an revised local ordinance governing the erection and maintenance of signs in the City of Mary Esther, Florida ("Mary Esther"). Seay's Complaint sought to permanently enjoin enforcement of the repealed ordinance, to compel Mary Esther to grant permits which would allow Seay to erect seven billboards within the city limits, and requested damages, costs, and attorneys' fees. Despite the fact that Mary Esther had repealed the complained of ordinance two months prior to the institution of the suit, Seay's Complaint did not challenge the new version of the sign ordinance. On cross-motions for summary judgment, the district court found certain portions of the challenged ordinance unconstitutional but held those portions severable from the remainder of the ordinance. In so doing, the district court further upheld Mary Esther's ban on billboards. The court also denied Seay's request for damages and motion for attorneys' fees and costs. Seay now appeals. After thorough review, we believe the case is moot and, therefore, nonjusticiable. Accordingly, we reverse the district court's grant of summary judgment and remand with instructions to dismiss for lack of subject matter jurisdiction.

**BACKGROUND**

The facts in this case are not in dispute. Seay is an outdoor advertising

corporation that buys or leases land to construct signs for commercial and noncommercial speech. Mary Esther is a small municipality, approximately two square miles in area with a population of approximately 4,055. Seay contracted with property owners in Mary Esther to construct seven billboards throughout the city. To that end, on June 7, 2001, Seay submitted seven applications for permits to post the signs. The erection of signs in Mary Esther was governed by Article 16 of Mary Esther's Land Development Code (the "Repealed Sign Ordinance"). On that very day, all seven applications were denied solely on the basis of Section 16.00.01(G) of the Repealed Sign Ordinance, which explicitly disallowed billboards. Seay did not appeal these rejections. Instead, Seay engaged the Mary Esther City Attorney in communications in an effort to resolve the matter. In the interim, on November 5, 2001, Mary Esther adopted Ordinance 2001-12 (the "New Sign Ordinance"), which repealed and replaced the Repealed Sign Ordinance, however, the ban on billboards remained intact. Because the ban on billboards remained, Seay did not resubmit its applications.

Seay filed suit against Mary Esther on January 17, 2002, two months following the enactment of the New Sign Ordinance. Interestingly, the Complaint claims only that the Repealed Sign Ordinance is unconstitutional, and does not reference or challenge the New Sign Ordinance. Moreover, although Seay's permits were denied

because of the particular provision banning billboards, Seay does not claim that that particular provision is unconstitutional. Rather, Seay claims that the Repealed Sign Ordinance is unconstitutional in its entirety because it violates the First Amendment to, and the Equal Protection Clause of, the United States Constitution and has resulted in an unconstitutional taking. Seay sought a permanent injunction precluding enforcement of the Repealed Sign Ordinance, as well as damages pursuant to 42 U.S.C. § 1983, and costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

Mary Esther moved to dismiss the complaint on, among other things, mootness grounds. The district court denied Mary Esther's motion, finding that the case had not been rendered moot by the New Sign Ordinance. In so holding, the district court applied the voluntary cessation doctrine and stated as its reasoning that Mary Esther had not established that the likelihood of further violations was sufficiently remote to dismiss Seay's complaint as moot. In addition, the Court stated that Seay's potential vested right to the permits may have also been sufficient to defeat Mary Esther's mootness argument.

The parties later filed cross-motions for summary judgment, and although the district court found several provisions of the Repealed Sign Ordinance unconstitutional, it determined that these invalid provisions were severable from the remainder of the Repealed Sign Ordinance. Accordingly, the court denied Seay's

4

motion and granted summary judgment in favor of Mary Esther. The district court further concluded that Seay was not entitled to any damages, costs, or attorneys' fees. Seay now appeals.

## DISCUSSION

Mootness is the threshold issue in this case. While neither party raises this issue on appeal, mootness is a jurisdictional question under Article III, which must be raised by the court. See, e.g., C & C Prods., Inc. v. Messick, 700 F.2d 635, 636 (11th Cir. 1983). The Article III requirement of a case or controversy is a fundamental aspect of our jurisdiction. If a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it. Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004) (citing Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001)). Mootness can occur due to a change in circumstances, or, as here, a change in the law. Id. "When a subsequent law brings the existing controversy to an end the case becomes moot and should be treated accordingly." Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000) (citations omitted). Thus, before we decide the legal questions posed by Seay, we raise *sua sponte* the question whether the New Sign Ordinance renders moot Seay's constitutional challenge to the Repealed Sign Ordinance. In finding this case

5

justiciable, the district court stated that Mary Esther was conceivably free to re-enact the offending provisions of the Repealed Sign Ordinance at any time and that Seay may have acquired vested rights under the former version of the New Sign Ordinance. We disagree.

## I.

Because of the possibility that the defendant could simply return to his old ways, "[i]t has long been the rule that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." Sec'y of Labor v. Burger King Corp., 955 F.2d 681, 684 (11th Cir. 1992) (internal quotations omitted). A case may nevertheless be moot if the defendant can demonstrate that (1) "there is no reasonable expectation that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations and internal quotations omitted). "However, governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." City of Sunrise, 371 F.3d at 1328-29. See also Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo, 981 F.2d 50, 59 (2d Cir. 1992) ("Some deference must be accorded to a [legislative body's]

6

representations that certain conduct has been discontinued."); Ragsdale v. Turnock, 841 F.2d 1358, 1365 (7th Cir. 1988) ("[C]essation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties.").

Constitutional challenges to statutes are routinely found moot when a statute is amended or repealed. See, e.g., Massachusetts v. Oakes, 491 U.S. 576, 582, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989); City of Sunrise, 371 F.3d at 1329; Harrison & Burrowes, 981 F.2d at 59. The Supreme Court cautions against holding a challenge to a repealed law moot if the law is reasonably likely to be reenacted or when it is replaced by another constitutionally suspect law.[1] "Likewise, this Court has repeatedly held that the doctrine of voluntary cessation does not apply in cases where challenged laws have been repealed unless there is some reason to believe that the law may be reenacted after dismissal of the suit." City of Sunrise, 371 F.3d at 1329.[2]

---

[1]See, e.g., City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (declining to find moot when the City expressly announced an intention to reenact the old language of a challenged law if the appellate court vacated the district court's holding that the language of the statute was unconstitutionally vague); Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (declining to find moot when law that replaced repealed law still potentially disadvantaged the plaintiff).

[2]See, e.g., Christian Coalition of Alabama v. Cole, 355 F.3d 1288 (11th Cir. 2004) (finding case moot where defendants submitted to the court a representation that the wrongful conduct would not be repeated); Jews for Jesus v. Hillsborough County Aviation Authority, 162 F.3d 627 (11th Cir.1998) (finding case moot where the changed policy was the result of

In City of Sunrise, this Court recently addressed similar issues under nearly identical circumstances. In that case, as here, an outdoor advertising company sued a city claiming that the sign code was unconstitutional. Prior to the filing of the suit, as here, the old sign code was replaced by the city with an amended sign code that eliminated most of the constitutionally infirm provisions while continuing to prohibit billboards. The Court held that the doctrine of voluntary cessation did not save the action from being rendered moot by the city's amendment of the code. In so holding, the Court was persuaded that the city would not re-enact the old sign code by counsel for the city's express disavowment at oral argument of any intention of defending the old sign code, and by the city's prompt amendment of the sign code in response to a letter from the plaintiff, before the city was ever sued. The Court found absolutely no indication that the city repealed its old sign code in bad faith.

Similarly, in the case at hand, enactment of the New Sign Ordinance was prompted by communications from Plaintiff's counsel and preceded the filing of this suit by two months. In addition, counsel for Mary Esther, likewise, expressly disavowed at oral argument any intention of re-enacting the Repealed Sign Ordinance. Accordingly, the voluntary cessation doctrine is inapplicable, and will

"substantial and conscientious deliberation," and had been "consistently applied" since its enactment).

not save this case from a mootness determination.[3]

## II.

We must next examine whether Seay possessed a vested right to the sign permits at the time of application. State law dictates whether a vested right has been created, and again, we are guided by our recent decision in City of Sunrise, where we engaged in a thorough and extensive analysis of applicable Florida law. As discussed in City of Sunrise, in order to claim a vested right, Seay must show one of the following circumstances: (1) that it has reasonably and detrimentally relied on existing law (equitable estoppel); or (2) that Mary Esther has acted in a clear display of bad faith. 371 F.3d at 1334. Neither circumstance is present in this case.

A.   *Equitable Estoppel*

In order to invoke the doctrine of equitable estoppel, Seay must show that "it has incurred substantial expense in reasonable reliance on existing law." Id. at 1338. Similar to the sign company in City of Sunrise, there is no evidence that Seay has incurred any significant expense in reliance on the Repealed Sign Ordinance. Indeed,

---

[3]In City of Sunrise, the Court contemplated that "if the City of Sunrise did nurture the intention of reinstating the old, purportedly unconstitutional Sign Code, and actually adopted the Amended Sign Code as a temporary measure whenever another lawsuit appeared on the horizon, [the Court] would plainly forbid it from doing so." 371 F.3d at 1320. We adopt this warning and caution, here, against such "flip-flopping."

the Repealed Sign Ordinance, on its face, precluded the construction of billboards, the very signs contemplated by Seay. Therefore, there is no basis to find that Seay "reasonably relied" on the provisions of the Repealed Sign Ordinance.

Moreover, Seay's standardized written lease agreements provide for no money to be paid to the landowners until the date of construction of the billboards. The billboards were never constructed. Seay has not paid any money to the landowners with whom it entered into contracts. There was no final lease agreement between Seay and the landowners for at least two of the sign permit applications submitted to Mary Esther. It does not even appear that Seay incurred any expense in preparing the permit applications, as the construction plans for the billboards were not site specific. Given all of this evidence, it is clear that there was no equitable estoppel that could conceivably rise to a vested right in the sign permits.

B.    *Bad Faith*

In the absence of equitable estoppel, in order to obtain a vested right, Seay must show that Mary Esther acted in bad faith in denying the sign permits. City of Sunrise, 371 F.3d at 1336. As explained in City of Sunrise, the Florida cases that have found bad faith have done so in instances where it was obvious that the municipality was purposely attempting to avoid granting the permit or license to the

10

plaintiff. Id. Examples of such situations include "an 'emergency ordinance' passed while the application was pending," "selective and erroneous enforcement of an arguably unconstitutional provision of the law," and "deliberate delay of the issuance of a permit until after a building moratorium went into effect." Id. at 1337-38. None of these scenarios, or anything akin to them, is present in this case. First, because there are no off-site billboards in Mary Esther, Seay cannot claim that Mary Esther selectively enforced its Repealed Sign Ordinance against Seay. Second, the circumstances surrounding Mary Esther's amendment to the allegedly unconstitutional Repealed Sign Ordinance are virtually identical to those in City of Sunrise, where no evidence of bad faith was found. In City of Sunrise, not only did the city amend its sign code to eliminate the constitutionally questionable provisions before the sign company filed suit, but also left intact those provisions under which the sign company's permit was denied. Id. at 1339. Similarly, Mary Esther repealed and replaced its allegedly unconstitutional sign ordinance two months before Seay initiated litigation, and the New Sign Ordinance retained the provision pursuant to which Seay's permits were denied, namely, the provision prohibiting the erection of billboards. Indeed, as we see it, the allegedly unconstitutional aspects of the Repealed Sign Ordinance had nothing whatsoever to do with the rejection of Seay's permit applications.

11

Accordingly, in this case, we can find neither equitable estoppel nor bad faith, and accordingly, Seay does not possess a vested right to any sign permits.

## III.

Having found that Mary Esther has no intention of reenacting the Repealed Sign Ordinance and that Seay possesses no vested right in a sign permit, the case may still be justiciable if the New Sign Ordinance contains the same constitutional defects as its predecessor. "[A] superseding statute or regulation moots a case only to the extent that it removes the challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." City of Sunrise, 371 F.3d at 1342-43 (quoting Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992)).

Upon review of the New Sign Ordinance, we believe that Seay's challenges to the Repealed Sign Ordinance are moot because they seem to have been remedied by the New Sign Ordinance.[4] However, if the challenged provisions of the New Sign Ordinance are severable from those portions of the Repealed Sign Ordinance that

---

[4]Ordinance 2001-12 repealed the original Sign Ordinance in its entirety and enacted a completely revised Sign Ordinance, which seemingly removed all of the language objected to by Seay and cured any other challenged defects.

12

actually caused the denial of the permit application, there is no point in evaluating

Seay's arguments as to those provisions.   City of Sunrise, 371 F.3d at 1347.

"Severability of a local ordinance is a question of state law."  Id. (citing City

of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 772, 108 S.Ct. 2138, 2152, 100

L.Ed.2d 771 (1988)).  Under Florida law, the test for severability is as follows:

> When part of a statute is declared unconstitutional the
> remainder of the act will be permitted to stand priovided:
> (1) the unconstitutional provisions can be separated from
> the remaining valid provisions, (2) the legislative purpose
> expressed in the valid provisions can be accomplished
> independently of those which are void, (3) the good and the
> bad features are not so inseparable in substance that it can
> be said that the Legislature would have passed the one
> without the other and, (4) an act complete in itself remains
> after the invalid provisions are stricken.

Id. at 1348 (citing Smith v. Department of Insurance, 507 So.2d 1089 (Fla. 1987)).

"According to Florida law, then, the unconstitutional part of a challenged statute

should be excised, leaving the rest intact and in force, when doing so does not defeat

the purpose of the statute and leaves in place a law that is complete."  Id.

Further bolstering the severability of the New Sign Ordinance is Mary Esther's

express, codified legislative desire to keep as much of its Sign Ordinance as possible:

> Severability: If any section, subsection, paragraph,
> subparagraph, division, subdivision, clause, sentence,
> word, or provision of this ordinance shall be adjudged by
> a court of competent jurisdiction to be invalid or

13

> constitutional, such portion shall be deemed a separate, distant, and independent provision and such judgment shall not affect, impair, invalidate, or nullify the remainder of this ordinance.

New Sign Ordinance, Section Two. Moreover, Florida law states that "[a]lbeit not binding, a legislatively expressed preference for the severability of voided provisions is persuasive." City of Sunrise, 371 F.3d at 1349 (citing Moreau v. Lewis, 648 So.2d 124, 127 (Fla. 1995) (citation omitted)). To rule that the challenged provisions were not severable from the remainder of the New Sign Ordinance "would seriously infringe on the notion of legislative autonomy and ignore Florida's doctrine of severability." Id.

The denial of Seay's permit applications was based solely on the provision of the Repealed Sign Ordinance prohibiting billboards. To the extent that any purportedly unconstitutional provisions of the Repealed Sign Ordinance were retained in the New Sign Ordinance, we find that the ban on billboards, which is never challenged by Seay, continues to further the purpose of the New Sign Ordinance in the absence of the challenged provisions.[5] The regulatory purpose of the undisputed

---

[5]For example, City Ordinance 2001-12, enacting the New Sign Ordinance, states that "the City Council of the City of Mary Esther finds and determines that the regulation of billboards as set forth herein will improve the beauty of the City of Mary Esther, foster overall improvement to the aesthetic and visual appearance of the city, preserve and open up areas for beautification on public property adjoining the public roadways, increase the visibility, readability and/or effectiveness of on-site signs by reducing and/or diminishing the visual clutter of off-site signs, enhance the City of Mary Esther as an attractive place to live and work, reduce blighting

14

sections of the Repealed Sign Ordinance – avoiding eyesores and traffic disruption – would not be destroyed by the elimination of the suspect content regulations.

Therefore, we find that any portions of the Repealed Sign Ordinance retained by the New Sign Ordinance that arguably may be unconstitutional are fully severable from the rest of the law, particularly the ban on billboards, which was the provision that lead to the rejection of Seay's permit applications. Therefore, we need not – and do not – evaluate whether other portions of the New Sign Ordinance may be unconstitutional because any decision on the merits can have no bearing on the case before us. See id. "Indeed, if we were to evaluate the validity of certain provisions of the [New Sign Ordinance], knowing that the result of this inquiry could have no effect on the result in this case, our pronouncements would be essentially advisory in nature." Id.

Accordingly, we hold that the challenge to the Repealed Sign Ordinance is moot, and this Court, therefore lacks subject matter jurisdiction.

REVERSED and REMANDED, with instructions to DISMISS for lack of subject matter jurisdiction.

---

influences, and improve traffic safety by reducing driver distractions."

15

EDMONDSON, Chief Judge, concurs in the result.