**LONGVIEW OUTDOOR ADVERTISING COMPANY, LLC, Plaintiff,**

v.

**CITY OF WINTER GARDEN, FLORIDA, Defendant.**

**No. 6:04 CV 465 ORL18JGG.**

United States District Court,
M.D. Florida.
Orlando Division.

March 29, 2006.

---

Gerald S. Livingston, William H. Hughes, III, Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., Tallahassee, FL, for Plaintiff.

Dykes C. Everett, Frank Moor Bedell, James Edward Cheek, III, Winderweedle, Haines, Ward & Woodman, P.A., Orlando, FL, for Defendant.

## ORDER

G. KENDALL SHARP, Senior District Judge.

THIS CAUSE comes before the Court upon the Motion for Summary Judgment (Doc. 50, filed December 5, 2005) by Defendant City of Winter Garden, Florida ("Winter Garden"). to which Plaintiff Longview Outdoor Advertising Company. LLC ("Longview") responded in opposition (Doc. 52, filed December 22, 2005). This is a First Amendment billboard case. Longview alleges that Winter Garden's denial of twelve applications for the construction of billboard signs violated Longview's freedom of speech. For the reasons herein stated. Winter Garden's motion for summary judgment is granted.

## I. BACKGROUND

Longview is a Florida Limited Liability Company licensed to engage in outdoor advertising within Florida. Winter Garden is a municipality located in west Orange County, Florida, with approximately 24,000 residents. Longview leased property in Winter Garden for the purpose of erecting "offsite" billboard signs displaying commercial and noncommercial messages. The term "offsite" refers to billboard messages relating to products, services, and activities unrelated to the property upon which the billboard is placed. (Compl. ¶ 11.) In 2003, Longview submitted twelve applications to Winter Garden for permits to construct offsite billboards on the leased property. By November 2003, Winter Garden denied all twelve applications pursuant to Section 102–92(4) of the Winter Garden Sign Code ("the Code"). Section 102–92(4) provides that, unless grandfathered in under the terms of the section, "billboard signs, regardless of zoning district," are prohibited in all districts. Winter Garden, Fla., Code § 102–92(4).[1] A billboard is "any sign in excess of 64 square feet of copy area … which provides to the observer information of any kind concerning any activity that takes place on property other than that where the sign is located." Winter Garden, Fla., Code § 102–1. In other words, offsite billboards are prohibited in Winter Garden. In the Amended Complaint, Longview alleges violations of the First and Fourteenth Amendments as well as the Florida Constitution. (Doc. 26, filed April 4, 2005.)

## II. MOTION FOR SUMMARY JUDGMENT

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see e.g., Stachel v. City of Cape Canaveral, 51 F.Supp.2d 1326, 1329 (M.D.Fla.1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy its burden. Celotex, 477 U.S. at 323–24, 106 S.Ct. 2548. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324, 106 S.Ct. 2548. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249–50, 106 S.Ct. 2505. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322, 106 S.Ct. 2548.

1. The Code is available in the record at Doc. 43–4.

## III.  DISCUSSION

### A.  Count I: Whether the Code Impermissibly Restricts Commercial Speech

■ In Count I, Plaintiff alleges that Winter Garden's prohibition of billboards constitutes an impermissible restriction on commercial speech. "The regulation of billboards is controlled by *Metromedia*, as 'the law of billboards' is 'a law unto itself.'" *Cafe Erotica of Fla., Inc. v. St. Johns County*, 360 F.3d 1274, 1285 (11th Cir.2004) (*citing Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 501, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981)). In *Metromedia*, the plurality opinion applied the following four-part test for determinating the validity of government restrictions on commercial speech:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia*, 453 U.S. at 507, 101 S.Ct. 2882. The "party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (internal quotations and citation omitted). The *Metromedia* plurality ultimately struck down a billboard prohibition ordinance due to an impermissible preference of commercial speech over noncommercial speech [2]; however, seven justices agreed that a prohibition of offsite commercial signs is constitutional. *See generally Metromedia*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800

(1981); *see also Dills v. City of Marietta*, 674 F.2d 1377, 1381 n. 4 (11th Cir.1982) ("[A] total of seven justices agreed that [the *Metromedia* defendant] had sufficiently justified a total ban of off-site commercial advertising.").

The first, second, and fourth prongs are satisfied in this case.[3] First, there is no indication of unlawful or misleading activity with respect to the commercial speech that Longview intends to engage in.

Second, Winter Garden's prohibition of off-site signs implements a substantial government interest. The Code states that "the regulation of off-site signs or billboards ... is deemed to be necessary to protect the character and development of the city as well as preserving traffic safety and aesthetics." Winter Garden, Fla., Code § 102–2(b). It is clear that Winter Garden's twin goal of furthering aesthetics and safety constitute substantial government interests. *See Metromedia*, 453 U.S. at 507–08, 101 S.Ct. 2882 ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."); *see also Southlake Prop. Assocs. Ltd. v. City of Morrow*, 112 F.3d 1114, 1116 (11th Cir. 1997) (stating that aesthetics and safety have been recognized as significant governmental interests which support time, place, and manner restrictions on commercial signs); *Harnish v. Manatee County*, 783 F.2d 1535, 1539 (11th Cir.1986) (stating that *Metromedia* and its progeny conclusively establish that aesthetics are a substantial governmental interest entitled to great respect): *Dills*, 674 F.2d at 1381 ("[I]t is well settled that substantial governmental interest exists in the promotion of both [aesthetics and traffic safety] ....").

---

**2.** *Metromedia*, 453 U.S. at 513–15, 101 S.Ct. 2882.

**3.** Neither party contends otherwise.

With respect to the fourth prong, the Code reaches no further than necessary to accomplish the objectives of aesthetics and traffic safety. Although the Code prohibits commercial offsite advertising, it still allows at least onsite commercial advertising and other exempted signs. *Metromedia* found that a similar restriction went "no further than necessary in seeking to meet its ends." *Metromedia*, 453 U.S. at 508, 101 S.Ct. 2882.

■ Longview contends that the third prong whether the Code "directly advances" aesthetics and safety, is not satisfied. Longview argues that prohibiting offsite commercial signs, while permitting onsite commercial signs, constitutes an underinclusive restriction that fails to directly advance the goals of aesthetics and safety. Aesthetics and safety are more directly advanced, Longview argues, by limiting the size, number, spacing, and location of signs.

Longview's argument is directly at odds with *Metromedia*. The plurality opinion in *Metromedia* found that prohibiting offsite advertising while permitting onsite advertising directly advanced government interests in safety and aesthetics. First, a measure of deference is due to the common-sense judgments of local lawmakers. *Metromedia*, 453 U.S. at 509, 101 S.Ct. 2882. To disagree that billboards present real hazards to traffic safety would be " 'trespassing on one of the most intensely local and specialized of all municipal problems.' " *Id.* (*quoting Ry. Express Agency, Inc. v. New York*, 336 U.S. 106, 109, 69 S.Ct. 463, 93 L.Ed. 533 (1949)). Second, "whether onsite advertising is permitted or not, the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and [aesthetics]. This is not

altered by the fact that the ordinance is underinclusive because it permits onsite advertising." *Metromedia*, 453 U.S. at 511, 101 S.Ct. 2882. Finally, it is reasonable for a city to "conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere." *Id.* at 512, 101 S.Ct. 2882. The *Metromedia* reasoning is directly applicable to the case at hand. Here, where Longview provides no evidence suggesting that the Code fails to advance Winter Garden's legitimate goals, the Court will not disturb the accumulated judgment of local lawmakers. Other courts have held similarly. *See, e.g., Action Outdoor Adver. JV, LLC v. Town of Shalimar*, 377 F.Supp.2d 1178, 1191 (N.D.Fla.2005); *Lamar Adver. of Mobile, Inc. v. City of Lakeland*, No. 97–721CIVT17A, 1999 WL 33590589, at *14 (M.D.Fla. April 15, 1999). While it may very well be the case that greater restrictions on the size, number, spacing, and location of the signs would advance even further the goals of safety and aesthetics, the point bears no relevance on the *Metromedia* analysis. The question is whether the Winter Garden Code, in its current form, directly advances safety and aesthetics. The answer, as made clear by the above discussion, is answered in the affirmative.

■ Because the Code satisfies the four-part *Metromedia* test, the Court finds that the Code does not impermissibly discriminate against commercial speech under either the federal or Florida state constitutions.[4] Summary judgment is accordingly granted as to Count I.

---

4. Longview alleges a violation of Article I. Section 4 ("Section 4") of the Florida Constitution, which provides in relevant part: "Every person may speak, write and publish

sentiments on all subjects but shall be responsible for the abuse of that right." Fla. Const. Art. I, § 4. Florida courts interpret Section 4 "as affording the same protection

## B. Count II: Whether the Code Impermissibly Discriminates Against Noncommercial Speech

██ In the Response to the Motion for Summary Judgment, Longview contends that the Code, in its original form, completely prohibited the display of noncommercial messages on signs, no matter whether such signs were onsite or offsite. Longview also points out, however, that since the time it filed this action, Winter Garden amended its sign code. On November 22, 2005, Winter Garden adopted Ordinance No. 05–40, amending the Code by adding Section 102–5, entitled "Substitution of Noncommercial Speech for Commercial Speech." (Doc. 52–2, at 2–6.) Section 102–5 states the following:

Notwithstanding anything contained in this chapter or code to the contrary, any sign erected pursuant to the provisions of this chapter or code with a commercial message may, at the option of the owner, contain a non-commercial message unrelated to the business located on the premises where the sign is erected. The noncommercial message may occupy the entire sign face or any portion thereof. The sign face may be changed from commercial to non-commercial messages, or from one noncommercial message to another, as frequently as desired by the owner of the sign, provided that the sign is not a prohibited sign or sign type and provided that the size, height, setback, and other dimensional criteria contained in this chapter and code have been satisfied.

(Doc. 52–2, at 4.) Section 102–5 explicitly allows an owner of land to erect a sign containing "a non-commercial message unrelated to the business located on the premises where the sign is erected." (Id.)[5] If there was a question as to whether the Code, in its original form, impermissibly discriminated against noncommercial speech. Section 102–5 makes clear that noncommercial speech suffers no greater restriction than commercial speech.

██ The issue, then, is whether Section 102–5 renders Longview's argument moot. "Constitutional challenges to statutes are routinely found moot when a statute is amended or repealed." *Seay Outdoor Adver., Inc. v. City of Mary Esther,* 397 F.3d 943, 947 (11th Cir.2005); *see also Nat'l Adver. Co. v. City of Miami,* 402 F.3d 1329, 1332 (11th Cir.2005) ("A change in the law, such as amending a zoning ordinance as here, or a change in other circumstances can give rise to mootness."). A constitutional challenge is not rendered moot, however, "if the law is reasonably likely to be reenacted or when it is replaced by another constitutionally suspect law." *Seay,* 397 F.3d at 947. This being said, it is well established that " 'governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.' " *Id.* at 947 (*quoting Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320,

against infringements on the freedom of speech as does the First Amendment to the United States Constitution." *MacLean v. City of St. Petersburg,* 194 F.Supp.2d 1290, 1303 (M.D.Fla.2002); *see also State v. Globe Commc'ns Corp.,* 622 So.2d 1066, 1075 (Fla. 4th DCA 1993). Thus, because the Code passes muster under the First Amendment, the Code also passes muster under the Florida state constitution.

**5.** The Code defines "sign" broadly: *"Sign* means every media or device used around, about or affixed to a structure or isolated from a structure that in any manner or means, whether by intent or by inadvertence, presents information to others through the media of human perception." Winter Garden, Fla., Code § 102–1.

1328–29 (11th Cir.2004)). Plaintiff apparently concedes that the addition of Section 102–5 renders his argument moot as he does not submit an argument against the addition of Section 102–5. (Doc. 52–1, at 12.) There is no indication in the record that Winter Garden is likely to repeal Section 102–5 or insert a new constitutionally suspect law. Longview's argument regarding the Code's alleged discrimination of noncommercial speech is therefore rendered moot. *See, e.g., Nat'l Adver. Co.,* 402 F.3d at 1335 (holding the City of Miami's amendments to its zoning code rendered moot the plaintiff's First Amendment challenge); *Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.,* 162 F.3d 627, 629 (11th Cir.1998) (holding that the county airport's revocation of challenged policies during the pendency of the lawsuit rendered moot the plaintiff's First Amendment challenge). Summary judgment is accordingly granted as to Count II.

**C. Count III: Whether the Code Impermissibly Favors Noncommercial Speech Over Other Noncommercial Speech**

In Count III of the Complaint, Longview alleged that Winter Garden impermissibly favored certain noncommercial speech over other noncommercial speech. As to Count III, the Response to the Motion for Summary Judgment states no more than the following: "[G]iven the [adoption of] Ordinance No. 05–40, it appears Winter Garden has resolved the constitutional infirmity of impermissibly favoring certain noncommercial messages over other noncommercial messages." (Doc. 52–1, at 12–13.) Longview's Response, therefore, must be read as abandoning Count III, or in the alternative, as conceding that Ordinance No. 05–40 now renders Count III moot. Summary judgment is accordingly granted as to Count III.

## IV. CONCLUSION

In accordance with the foregoing. it is **ORDERED** and **ADJUDGED** that Winter Garden's Motion for Summary Judgment (Doc. 50) is **GRANTED.** The Clerk of the Court is directed to enter judgment accordingly and CLOSE THE CASE.