[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-15593

_____

D. C. Docket No. 01-03039-CV-JLK

NATIONAL ADVERTISING CO.,

Plaintiff-Appellant,

versus

CITY OF MIAMI,
MIAMI-DADE COUNTY, FLORIDA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(MARCH 21, 2005)

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and RESTANI*,
Judge.

_____

* Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by
designation.

PER CURIAM:

In this case, we decide whether a billboard company's challenge to a City's zoning ordinance is rendered moot by the subsequent amendment of the ordinance. Plaintiff-Appellant National Advertising Company ("National") appeals the district court's order granting final summary judgment in favor of Defendant-Appellee, the City of Miami. National brought suit against the City, claiming that the City's Zoning Code violated the First and Fourteenth Amendments to the United States Constitution by impermissibly infringing upon the free speech rights of National and its advertisers. We are convinced that amendments to the City's zoning code rendered this case moot and we therefore reverse the district court's grant of summary judgment with instructions to dismiss the case for lack of jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

In March of 1990, the City of Miami adopted a comprehensive Zoning Ordinance that is the subject matter of this suit. Ordinance No. 11,000 divided the City into 24 geographical areas and enacted a comprehensive scheme of regulations applicable to property located in each area. The ordinance was enacted with, among other goals, the purposes of "promot[ing] the public health [and] safety . . . provid[ing] a wholesome, serviceable, and attractive community" and

"increas[ing] traffic safety." Miami, Fla., Zoning Ordinace § 120 (1991). While the zoning code governed all aspects of land use within the Miami City limits, some regulations focused on billboards and signs throughout the City. However, the City provided a grace period of five years for advertisers, like National, with existing structures already erected to remove nonconforming billboards.

National is a Delaware corporation and a wholly-owned subsidiary of Viacom Outdoor Inc., a corporation formerly known as Infinity Outdoor, Inc. National is a leader in the outdoor advertising industry, specializing in the leasing of billboards, and has operated in Miami for approximately forty years. National normally constructs its billboards on either leased or purchased property and then rents space on the billboards to advertisers. National operates more than forty outdoor advertising signs in various locations throughout the City of Miami. Most of National's billboards display commercial messages, however a few of them display non-commercial, public interest messages.

After nearly a decade of non-enforcement of the Zoning Ordinance's billboard provisions, in April 2001 the City commenced enforcement by issuing notices to property owners who had nonconforming billboards on their property. The notices advised the property owners that they were in violation of the City's zoning code and told the owners to correct the violations by May 2001, or face

3

fines and other penalties brought by the City's Code Enforcement Board. On July 10, 2001, the Miami City Commission authorized the City manager to arrange a Commission meeting where the City Commission could make findings that would justify the City's removal of billboards without notice and to hold outdoor advertising companies in contempt of the City Commission. The next day, National filed this action in district court.[1] While National engages in predominantly commercial advertising, its complaint invoked the free speech overbreadth doctrine and alleged that the City's Zoning Ordinance discriminated against non-commercial speech in violation of the First and Fourteenth Amendments, lacked procedural safeguards in violation of the First Amendment, and that the City's decision to begin immediate removal of signs violated Due Process and the First Amendment.

Shortly after filing its complaint, National moved for an injunction to prevent the City of Miami from acting to remove signs or enforce the ordinance. The district court denied National's motion for injunctive relief, and National

---

[1] In addition to this case, National also filed a second suit against the City. That case, *National Advertising Co. v. City of Miami*, Case No. 02-20556-CIV-KING ("*National* II"), was filed on February 21, 2002 in response to the City's rejection of seven permit applications to construct billboards. *National* I and *National* II were consolidated in the district court below. However, we ordered the cases to be argued separately before this court. In this case we asked the parties to focus solely on the constitutionality of the zoning ordinance itself. In the companion case, *National* II, the parties were asked to discuss the issues related to the permitting process in its entirety.

appealed.  In an unpublished opinion, *Nat'l Adver. Co. v. City of Miami*, 48 Fed. Appx. 740, 2002 WL 31054893 (11th Cir. Aug 27, 2002), we vacated the district court's denial of National's motion and remanded to the district court for further consideration.  Thereafter, National amended its complaint, alleging three new claims.  National asserted (1) that the City's refusal to stay the accrual of code enforcement fines during the pendency of litigation discriminated against National for its exercise of its First and Fourteenth Amendment rights, (2) that the discriminatory acts of the City and Miami-Dade County violated the First Amendment and the Equal Protection Clause, and (3) that the City and the County's lack of procedural safeguards violate the First Amendment.[2] Additionally, National sought another injunction.

After National filed its first suit against the City, the City began the process of amending its zoning regulations pertaining to signs.[3]  On January 5, 2002 the City published notice of its intent to amend the Zoning ordinance and those amendments were adopted on April 11, 2002.  The amendments changed many

---

[2]Although National's amended complaint added the County as a party, the record makes no mention of appearances by the County and they did not appear before us on appeal.

[3]There is some dispute as to when the process of amending the City's zoning ordinance began.  However, since we conclude that the City has no intention of re-enacting the allegedly unconstitutional segments of the zoning code, we need not decide what initially motivated the City's comprehensive overhaul of its entire zoning ordinance.

aspects of the City's sign code but specifically clarified that non-commercial speech may be placed on any sign where commercial speech was permitted.

In September 2003, the district court entered an order granting summary judgment to the City of Miami and denying National's motion for summary judgment. The district court held that National lacked standing under the overbreadth doctrine to enforce the rights of non-commercial speakers. Additionally, the court held that, assuming National did have standing to enforce the rights of non-commercial speakers, the zoning ordinance did not violate the First Amendment.

STANDARD OF REVIEW

The City contends that the changes to the Zoning Code render National's claims moot. Mootness is the central issue in this case and "[w]e review the question of mootness *de novo*." *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004) (internal citations omitted). Furthermore, because the question of mootnesss is jurisdictional in nature, it may be raised by the court *sua sponte*, regardless of whether the district court considered it or if the parties briefed the issue. *Sannon v. United States*, 631 F.2d 1247, 1250 (5th

6

Cir.1980).[4]

## DISCUSSION

We have long recognized that the Constitution limits the jurisdiction of federal courts. The United States Constitution, Article III, Section 2, provides that the judicial power of the Untied States federal courts shall extend only to "cases" and "controversies." *Coral Springs*, 371 F.3d at 1327 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351 (1992)). The Article III case or controversy limitation on the jurisdiction of federal courts serves an important role in our constitutional separation of powers framework, *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998), and it is a fundamental principle of our form of democratic government that the role of courts is properly a limited one. Thus, we strictly observe the cases or controversies limitation. *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324, 82 L. Ed2d 556 (1984).

Mootness is among the important limitations placed on the power of the federal judiciary and serves long-established notions about the role of unelected courts in our democratic system. By its very nature, a moot suit "cannot present an

[4]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs*, 371 F.3d at 1328 (internal citations omitted). If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of a case would constitute an advisory opinion. *See id.; Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001); *Socialist Workers Party*, 145 F.3d at 1244. A change in the law, such as amending a zoning ordinance as here, or a change in other circumstances can give rise to mootness. We have held that "[w]hen a subsequent law brings the existing controversy to an end the case becomes moot and should be treated accordingly." *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000). In other words, federal courts lack jurisdiction to hear and decide cases where changes in the law have rendered the case moot.

Accordingly, we must decide whether the City of Miami's subsequent amendments to its zoning ordinance render National's legal challenges moot. If the zoning ordinance amendments have rendered this suit moot, then we must dismiss the case for lack of jurisdiction.

This Court and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation. For example, in *Coral Springs* we noted that

"[g]enerally, a challenge to the constitutionality of a statute is mooted by repeal of the statute." 371 F.3d at 1329. Similarly, in *Coalition for the Abolition of Marijuana Prohibition*, we held that "when an ordinance is repealed by the enactment of a superseding statute, then the 'superseding statute or regulation moots a case.'" 219 F.3d at 1310 (quoting *Naturist Soc'y, Inc. v. Fillyay*, 958 F.2d 1515, 1520 (11th Cir. 1992)). Furthermore, the Supreme Court has many times held that amendments or revocation of challenged legislation renders the lawsuit moot and deprives the court of jurisdiction.[5]

National argues that the City of Miami's voluntary cessation of their allegedly unconstitutional conduct does not render National's challenge moot. National claims that this case falls within one of the important exceptions to the case or controversy limitations on federal courts' jurisdiction because of the

---

[5]We cataloged many of the Supreme Court decisions on this subject in our *Coral Springs* decision:

> *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474, 110 S. Ct. 1249, 1252, 108 L. Ed.2d 400 (1990) (holding that a Commerce Clause-based challenge to Florida banking statutes was rendered moot by amendments to the law); *Massachusetts v. Oakes*, 491 U.S. 576, 582-83, 109 S. Ct. 2633, 2637-38, 105 L. Ed.2d 493 (1989) (holding that an overbreadth challenge to a child pornography law was rendered moot by amendment to the statute); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103, 102 S. Ct. 867, 869, 70 L. Ed.2d 855 (1982) (*per curiam*) (holding that the challenge to a university regulation was moot because the regulation had been substantially amended); *Kremens v. Bartley*, 431 U.S. 119, 128-29, 97 S. Ct. 1709, 1715, 52 L. Ed.2d 184 (1977) (holding moot a constitutional challenge to a state statute governing the involuntary commitment of mentally ill minors, because the law had been replaced with a different statute); *Diffenderfer v. Cent. Baptist Church, Inc.*, 404 U.S. 412, 415, 92 S. Ct. 574, 576, 30 L. Ed.2d 567 (1972) (holding moot a challenge to a Florida tax exemption for church property when the law had been repealed).

*Coral Springs*, 371 F.3d at 1329

possibility that, if the court does not rule on the ordinance, the City will simply reenact the challenged ordinance at some later date. While our general rule is that repeal of a statute renders a legal challenge moot, an important exception to that general rule is that mere voluntary termination of an allegedly illegal activity is not always sufficient to render a case moot and deprive the federal courts of jurisdiction to try the case. "It has long been the rule that 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i..e., does not make the case moot.'" *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S. Ct 894, 897, 97 L. Ed. 1303 (1953)). For a defendant's voluntary cessation to moot any legal questions presented and deprive the court of jurisdiction, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks and citations omitted). In other words, voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.[6]

National is correct in pointing out that when a defendant has voluntarily ceased its offending conduct we are reluctant to dismiss the case as being moot,

---

[6]Miami amended its sign code six months after being sued by National. Whatever impact this fact might have, it was not expressly argued by National. Furthermore, other evidence persuades us that Miami did not amend its sign code to deprive this Court of jurisdiction.

10

particularly if there is affirmative evidence that the defendant is likely to return to its prior ways following our dismissal of the litigation. However, "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Coral Springs*, 371 F.3d at 1328-29. Indeed, as we noted above, the cases are legion from this and other courts where the repeal of an allegedly unconstitutional statute was sufficient to moot litigation challenging the statute. *See also* 13A Wright et al., *Federal Practice and Procedure* § 3533.7 (2d ed. 2004) ("Courts are more apt to trust public officials than private defendants to desist from future violations.").

In sum, when a court is presented with evidence of a "substantial likelihood" that the challenged statute will be reenacted, the litigation is not moot and the court should retain jurisdiction. *Coral Springs*, 371 F.3d at 1329. However, in the absence of evidence indicating that the government intends to return to its prior legislative scheme, repeal of an allegedly offensive statute moots legal challenges to the validity of that statute. "Whether the repeal of a law will lead to a finding that the challenge to the law is moot depends *most significantly* on whether the court is sufficiently convinced that the repealed law will not be brought back." *Coral Springs*, 371 F.3d at 1331 (emphasis added). Therefore, National's reliance on *Nat'l Adver. Co. v. City of Fort Lauderdale*, 934 F.2d 283 (11th Cir. 1991) is misplaced. In that case, the City of Fort Lauderdale amended its sign code in

response to a suit challenging the constitutionality of the statute. The City of Fort Lauderdale's conduct, including its motion to dismiss for lack of subject matter jurisdiction filed the day after its amendment took effect, "sufficiently convinced" us that if the suit was dismissed as moot, that the City would simply re-enact the previous version of its sign regulations. We therefore held that the case was not moot, precisely because of the risk that the City might return to their previous course of conduct. *Fort Lauderdale*, 934 F.2d at 286. We are convinced that there is no similar risk in this case. The only evidence that National has presented in this case to suggest that the City might return to its previous version of the ordinance is the fact that the City has defended its ordinance. However, once the repeal of an ordinance has caused our jurisdiction to be questioned, National bears the burden of presenting affirmative evidence that its challenge is no longer moot. Mere speculation that the City may return to its previous ways is no substitute for concrete evidence of secret intentions.

National is also incorrect in suggesting that we should focus on the City's motivation in amending the code. The City's purpose in amending the statute is not the central focus of our inquiry nor is it dispositive of our decision. Rather, the most important inquiry is whether we believe the City would re-enact the prior ordinance. Again, there is no evidence in this case suggesting any risk that the City of Miami has any intention of returning to its prior course of conduct.

12

Given the legal framework for determining when subsequent events can moot a legal challenge, we apply those legal principles to the facts of this case. In April 2002, the City of Miami completely revised and amended its zoning ordinances, changing entirely the provisions of their code that were the gravamen of this suit.[7] Specifically, the City's revised zoning ordinance mooted National's claims that the City impermissibly favored commercial speech over non-commercial speech. The new zoning ordinance altered completely the City's regulations pertaining to commercial and non-commercial speech. The amendments made clear that non-commercial messages would be permitted anywhere commercial messages were allowed. Additionally, the amendment contained a "substitution clause" that stated that "[a]ny sign allowed herein may contain, in lieu of any other message or copy, any lawful, non-commercial message, so long as the sign complies with the size and height, area, and other requirements." Finally, Ordinance 12,213 amended the City's definition of onsite signs to make it clear that all non-commercial messages were considered onsite. These amendments changed the zoning code so that the allegedly unconstitutional

---

[7]National spends a large portion of its brief arguing that the April 2002 amendments failed to cure the City's zoning code of constitutional infirmities in the permitting process. Those arguments are misplaced in this appeal. We address National's complaints regarding the permitting process in this case's companion, *National* II. Additionally, because this case is a facial challenge to Miami's zoning ordinance, we need not address any issues related to whether National had acquired any vested rights prior to the amendments which mooted this claim. *Cf. Coral Springs*, 371 F.3d at 1333-1342.

portions of the City's zoning ordinance no longer exist. As a result of these changes we would be incapable of granting National any of the relief requested in its original complaint and any decision we would render would clearly constitute an impermissible advisory opinion. Therefore, National's claims are moot.

While we refrain from deciding whether these changes would nullify *any* potential constitutional infirmities in the City's zoning ordinance, we do hold that the amendments rendered all the complaints raised by National in this suit moot. Whatever defects may remain in the City of Miami's zoning ordinance or other laws are not properly before us and we do not address them. As we have held, "under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Geaneas v. Willets*, 911 F.2d 579, 584 (11th Cir. 1990).

## CONCLUSION

Federal courts are courts of limited jurisdiction. Under our Constitutional separation of powers framework, it is essential that all three branches of government strictly observe the limitations on their proper dominion. Thus, out of respect for their limited role within our government, federal courts have long refused to issue advisory opinions. Additionally, we have repeatedly held that moot cases fail to meet the important requirement that courts only address active cases or controversies. In this case, the City of Miami's amendments to the its

14

zoning code effectively rendered moot National's claims as to the constitutionality of the prior version of the code. Furthermore, we are confident that the City does not contemplate returning to its prior zoning ordinance, given our strict disapproval of this type of governmental "flip-flopping." *See Jews for Jesus v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 630 (11th Cir. 1998). In such an instance, the courthouse door would remain open for reinstatement of such a law suit. *Id.* We are convinced that since the City harbors no intentions of returning to the prior zoning ordinance this case does not fall within an exception that would require us to retain jurisdiction.

REVERSED and REMANDED, with instructions to DISMISS for lack of subject matter jurisdiction.