[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12506
_____

D.C. Docket No. 1:13-cv-00072-MW-GRJ


KIM COOK,
BETHANN BROOKS,
EMILY JEFFERIS,
CATHY MCCONNELL,
SHAUNA PAEDAE,
JANINE PLAVAC,
CATHERINE BOEHME,
ALACHUA COUNTY EDUCATION ASSOCIATION,
HERNANDO CLASSROOM TEACHERS ASSOCIATION,
ESCAMBIA EDUCATION ASSOCIATION,

                                                    Plaintiffs - Appellants,

versus

TONY BENNETT, etc.,

                                                            Defendant,

GARY CHARTRAND,
In his official capacity as member of the
Florida State Board of Education,
ADA G. ARMAS,
In her official capacity as member of the
Florida State Board of Education,

SALLY BRADSHAW,
In her official capacity as member of the
Florida State Board of Education,
JOHN A. COLON,
In his official capacity as member of the
Florida State Board of Education,
BARBARA S. FEINGOLD,
In her official capacity as member of the
Florida State Board of Education,
School Board of Hernando County,
Pam Stewart,
John R. Padget
Kathleen Shanahan, et al.,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 7, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR, and HIGGINBOTHAM,[*]
Circuit Judges.

JILL PRYOR, Circuit Judge:

Florida public school teachers challenged Florida's Student Success Act, as

well as the Florida State Board of Education's and three school districts'

implementation of the Act, alleging that the Act resulted in teacher evaluation

policies that violated the teachers' rights to due process and equal protection under

_____

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

2

the Fourteenth Amendment.  Because we agree with the district court that the policies pass rational basis review, we affirm.

I.

In 2011, the Florida legislature enacted the Student Success Act, establishing new requirements for public school teachers' performance evaluations.  Fla. Stat. § 1012.34 (2011).  The Act provided that "[a]t least 50 percent of a performance evaluation must be based upon data and indicators of student learning growth assessed annually by statewide assessments."  *Id.* § 1012.34(3)(a)(1).  It tasked the Florida Commissioner of Education with approving "a formula to measure individual student learning growth on the Florida Comprehensive Assessment Test (FCAT)."  *Id*. § 1012.34(7)(a).

The Commissioner developed a formula known as the FCAT value-added model ("FCAT VAM"), which is based on students' FCAT scores for English and mathematics and accounts for a host of predictor variables (such as a student's prior test scores, attendance rate, and disability status).  The FCAT VAM outputs a "teacher component," which measures an individual teacher's effect on student scores, and a "common school component," which measures the potential impact of factors that are part of a school's environment, such as the principal or the neighborhood.  A teacher's final evaluation score is calculated by adding the

3

FCAT VAM teacher component score with 50 percent of the common school component score.

Students take the English FCAT exam in grades 3 through 10 and the mathematics FCAT exam in grades 3 through 8.  The FCAT VAM was designed to provide evaluation scores for teachers who teach FCAT courses and whose students have FCAT scores from at least two years: the earlier score serves as a baseline of the student's achievement, and the more recent score is used to evaluate his or her current teacher's performance.  Thus, the model only works as designed in evaluating teachers of English in grades 4 through 10 and math in grades 4 through 8.  The district court referred to these teachers as "Type A" teachers, and we will adopt its nomenclature for the purposes of this opinion.  The rest of Florida's public school teachers fall into two groups.  "Type B" teachers teach students in grades 4 through 10, but in subjects other than English or math.  A Type B teacher's students have at least two FCAT scores that can be used in the FCAT VAM, but the teacher does not teach the subjects in which the scores were received.  "Type C" teachers teach students who either (1) are in grades below 4 or above 10 or (2) do not take standardized tests.[1]  A Type C teacher's students do not have at least two FCAT scores that can be used in the FCAT VAM.

---

[1] For example, severely disabled students do not take the FCAT.

4

The Student Success Act required schools to adopt the FCAT VAM for purposes of evaluating Type A teachers beginning with the 2011-12 school year. *Id*. § 1012.34(7)(b).  For Type B and C teachers, the Act instructed school districts to select an "equally appropriate formula for measuring student learning growth." *Id*. § 1012.34(3)(a)(1).  However, most districts—including the three school district defendants here—lacked the resources necessary to develop alternative assessments (such as district-wide testing in non-FCAT subjects) or the statistical models (equivalent to the FCAT VAM) necessary to derive student growth measurements from alternative assessment data.  In the absence of an "equally appropriate formula," the Act required school districts to evaluate Type B teachers using "the growth in learning of the classroom teacher's students on statewide assessments." *Id.* § 1012.34(7)(e).  In practice, Type B teachers' evaluations were based on FCAT VAM scores derived from their students' FCAT scores in English and math.

For Type C teachers, in the absence of a formula, school districts had to evaluate them using "measurable learning targets . . . established based upon the goals of the school improvement plan and approved by the school principal." *Id.* In practice, Type C teachers' evaluations were based on school-wide FCAT VAM scores derived from the FCAT scores of students whom the Type C teachers did not teach.  The Florida State Board of Education approved the districts' evaluation

5

procedures and assisted the districts in calculating FCAT VAM scores for Type B and C teachers.

Plaintiffs, seven Florida public school teachers and three local associations that represent teachers, brought this lawsuit against the school districts of Alachua, Escambia, and Hernando Counties (collectively, the "district defendants"), as well as the Florida Commissioner of Education and other officials from the Florida State Board of Education (collectively, the "state defendants"). The lawsuit challenged, under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the constitutionality of the Student Success Act and the district and state defendants' implementation of the Act.

In ruling on the defendants' motion to dismiss, the district court determined that the plaintiffs had standing because they had alleged a concrete risk that they would "make[] less money in the future than they would have absent the irrational evaluation system authorized by the Act." Order Granting in Part and Den. in Part State Defs.' Mot. to Dismiss, ECF No. 111 at 9. The district court granted the defendants' motion to dismiss the complaint's facial challenge to the Student Success Act on the ground that the Florida legislature had a rational basis for enacting the evaluation scheme. Although the court allowed the plaintiffs' as-applied claims to proceed, it later granted the defendants summary judgment on those claims, holding that the evaluation policies implemented under the Act

6

(approved by the state defendants and implemented by the district defendants) similarly were justified by a rational basis. Because the defendants did not raise standing at summary judgment, the district court did not rule on it further. The plaintiffs timely appealed the district court's order.[2]

## II.

We review questions of standing and mootness *de novo*. *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004). Standing is determined at the time the plaintiff files its complaint. *Arcia*, 772 F.3d at 1340. We review a district court's grant of summary judgment *de novo*. *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 341 (11th Cir. 2012). At this stage in the proceedings, we must view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 342. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

---

[2] The plaintiffs also appealed the district court's order dismissing their facial challenge to the Student Success Act. On appeal, however, the plaintiffs have abandoned the facial challenge. Thus, we address only the plaintiffs' as-applied challenges, which were the subject of the district court's summary judgment order.

We first address the defendants' challenge to the plaintiffs' standing. To satisfy Article III's standing requirements, the plaintiffs must show: (1) they have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992). In a claim for prospective relief, like this one, a plaintiff must show "a real and immediate threat of future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006).

The state defendants argue that the teachers lack standing because the teachers have not sufficiently shown that their past evaluations could lead to any adverse employment outcomes. The plaintiff teachers are either Type B or Type C; that is, they teach a range of non-FCAT classes, such as art, music, and 11th grade mathematics. In both annual evaluations that have taken place under the challenged evaluation scheme, all of the plaintiffs received student growth scores—the section of their evaluations based on the FCAT VAM—that were substantially lower than their scores in the sections of the evaluations not based on the FCAT VAM. The evaluation scores affect the teachers' future employment outcomes, including their eligibility for raises, which are statutorily tied to performance evaluations. *See* Fla. Stat. § 1012.22(1)(c)(4)-(5). This sort of injury

is concrete, imminent, and directly traceable to the defendants' evaluation policies.
Further, the injury is redressable by injunctive relief. Accordingly, the plaintiffs
have standing to bring this case.

Next, we must consider whether this lawsuit has become moot as a result of
changes to Florida law since the lawsuit was filed.[3] Generally, a case "becomes
moot only when it is impossible for a court to grant any effectual relief whatever to
the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. __,
132 S. Ct. 2277, 2287 (2012). When a defendant voluntarily ceases the activity
that forms the basis of the lawsuit, a federal court does not necessarily lose
jurisdiction. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528
U.S. 167, 189 (2000). Instead, the party asserting mootness must show that
"subsequent events [have] made it absolutely clear that the allegedly wrongful
behavior could not reasonably be expected to recur." *United States v.
Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968); *see also
Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005)
("[V]oluntary cessation of offensive conduct will only moot litigation if it is clear

---

[3] In their brief, the state defendants incorrectly argue that changes in the law and in the districts' policies since the plaintiffs filed their complaint mean that the plaintiffs lack standing. But because standing is measured at the time a lawsuit is filed, *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989), subsequent changes in the law are properly considered under mootness doctrine. Because mootness cannot be waived by the parties, the defendants' mislabeling of their argument does not affect our obligation to determine independently whether the state defendants have met their burden of showing that the case is moot. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1331-32 (11th Cir. 2005).

9

that the defendant has not changed course simply to deprive the court of jurisdiction.").

When the government is the defendant, we extend a rebuttable presumption that government actors are "unlikely to resume illegal activities." *Coral Springs*, 371 F.3d at 1328-39; *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014). "This presumption is particularly warranted in cases where the government repealed or amended a challenged statute or policy—often a clear indicator of unambiguous termination." *Doe*, 747 F.3d at 1322.

Since this lawsuit was filed, the Florida legislature has amended the Student Success Act such that, "[f]or grades and subjects not assessed by statewide, standardized assessments, each school district shall measure student performance using a methodology determined by the district." Fla. Stat. § 1012.34(7)(b) (2015). As a result, the school districts' evaluation policies as to both Type B and Type C teachers are, according to the state defendants, "in a state of flux" for the 2014-15 school year. State Appellees' Br. at 17.

The changes in Florida law and in the districts' policies are insufficient to render this case moot, however, because it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Concentrated Phosphate*, 393 U.S. at 203. Although the defendant districts have not yet finalized their new teacher evaluation policies, the revised Florida law

would still allow the districts to evaluate teachers of non-FCAT classes using the FCAT VAM. Even with a presumption in favor of the government actors, there remains a real possibility that the districts could implement policies with effects similar to those at issue in this lawsuit. And, significantly, the law continues to tie teachers' salary schedules to past performance reviews. The government has not carried its burden to show that this case is moot; thus, we will consider the merits of the plaintiffs' appeal.

## IV.

We begin by analyzing the plaintiffs' substantive due process claim. For such claims, we apply the rational basis standard when a challenged law infringes upon a non-fundamental right, as is the case here. *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013). Under rational basis review, the school district's evaluation policies must be rationally related to a legitimate governmental purpose. *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 n.6 (1993). We will uphold a law if "there is any reasonably conceivable state of facts that could provide a rational basis for [it]." *Id.* at 313. "[A] state has no obligation to produce evidence to sustain the rationality of a statutory classification. . . . [T]he burden is on the one attacking the law to negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Deen v. Egleston*, 597 F.3d 1223, 1230 (11th Cir. 2010) (quotation marks omitted). A law

need not be sensible to pass rational basis review; rather, it "may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315. A statute survives rational basis review even if it "seems unwise . . . or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632 (1996).

The plaintiffs argue that the evaluation policies fail rational basis review because the policies arbitrarily and illogically evaluate teachers based on test scores either of students or in subjects they did not teach. The plaintiffs claim that the evaluation policies are not rationally related to, and in fact run counter to, the purpose for which the FCAT VAM was developed—that is, to attribute student learning growth to specific teachers by controlling for variables such as student demographics or school-wide factors like a principal.

Certainly the FCAT VAM was not designed to evaluate Type B and C teachers, but the defendants do not justify the evaluation policies in relation to the FCAT VAM's purpose. Rather, they argue that the policies are rationally related to the purpose behind the Student Success Act itself, which is to "increas[e] student academic performance by improving the quality of instructional, administrative, and supervisory services in the public schools of the state." Fla. Stat. § 1012.34(1)(a). The plaintiffs have failed to carry their burden to refute this justification for the law. While the FCAT VAM may not be the best method—or

12

may even be a poor one—for achieving this goal, it is still rational to think that the challenged evaluation procedures would advance the government's stated purpose.

As the plaintiffs conceded at oral argument, Florida officials could have reasonably believed that (1) a teacher can improve student performance through his or her presence in a school and (2) the FCAT VAM can measure those school-wide performance improvements, even if the model was not designed to do so. For example, Type B teachers may have a positive impact on their students that bleeds over into the students' work in other classes, including those measured by the FCAT. Type C teachers may have a positive impact on the learning environment of the school overall. The FCAT VAM can capture such impacts either by measuring the growth of a Type B teacher's students or by measuring the growth of a school overall. It is also reasonable to think that tying teacher evaluation scores and teacher compensation to FCAT VAM scores can incentivize teachers to pursue more school-wide improvements, which would in turn improve student academic performance. Thus, we agree with the district court that the policies pass rational basis review. Without a doubt, the evaluation scheme has led to some unfair results for Type B and C teachers, but "[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally

13

unwarranted no matter how unwisely we may think a political branch has acted."

*Vance v. Bradley*, 440 U.S. 93, 97 (1979) (footnote omitted).[4]

We reach the same result as to the plaintiffs' equal protection claim.

Rational basis review also applies to equal protection challenges concerned with a

distinction between two groups drawn without reference to a protected class, as is

the case here. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

On rational basis review, "[t]he general rule is that legislation is presumed to be

valid and will be sustained if the classification drawn by the statute is rationally

related to a legitimate state interest." *Id.* Rational basis review in the context of

equal protection is essentially equivalent to rational basis review in the context of

due process. *Gary v. City of Warner Robins*, 311 F.3d 1334, 1338 n.10 (11th Cir.

2002).

As we held above, the challenged evaluation procedures were rationally

related to the purpose of improving student academic performance. Accordingly,

the plaintiffs' equal protection claim also fails. The plaintiffs argue that the

decisions in *Debra P. v. Turlington*, 644 F.2d 397 (5th Cir. May 1981),[5] and

*Armstead v. Starkville Mun. Separate Sch. Dist.*, 461 F.2d 276 (5th Cir. 1972),

---

[4] The Supreme Court's intuition from *Vance* has apparently been borne out in this case, because in 2014 the Florida legislature retooled and made some improvements to the statutory scheme for teacher evaluations.

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted the case law of the former Fifth Circuit handed down prior to close of business on September 30, 1981, as its governing body of precedent.

dictate the opposite result. *Turlington* concerned Florida's creation of a new prerequisite for graduation, requiring students to get a minimum score on a state-created assessment test. The Fifth Circuit held that the test was not rationally related to a legitimate state interest insofar as it tested material not taught to the students. The court remanded the case for further development of the record as to whether the test covered untaught material.

*Armstead* struck down a Mississippi school's use of the Graduate Record Examination ("GRE") as an employment qualification for teachers. Both prospective and incumbent teachers had to achieve a certain minimum score on the GRE in order to gain employment or continue teaching at the school. It was undisputed in the case that the GRE could not predict the future effectiveness of teachers. The court held that the GRE had "no reasonable function in the teacher selection process." *Armstead*, 461 F.2d at 280.

*Armstead* and *Turlington* are distinguishable from the case before us. Both cases involved tests that could not further a legitimate state objective.[6] A test based on information never taught to a student cannot assess whether a student is ready for graduation from high school. Similarly, the GRE (which measures vocabulary, reading comprehension, and mathematical reasoning to determine an

---

[6] We also note that in both *Armstead* and *Turlington*, the challenged policies disproportionately affected black teachers (in *Armstead*) and black students (in *Turlington*). This case, on the other hand, contains no allegation that the evaluation policies affect teachers differently based on race.

individual's capacity for advanced study) cannot predict how effective a teacher will be in the classroom. In this case, however, the plaintiffs have conceded that the FCAT VAM is—or at least a rational policymaker could believe it is—capable of measuring some marginal impact that teachers can have on their own students or on the overall school environment. Thus, the FCAT VAM is not analogous to the tests at issue in *Armstead* and *Turlington*, and it was not irrational for the districts to use the model for teacher evaluations.

## V.

Because the state and district defendants could have rationally believed that the challenged evaluation policies would improve students' academic achievement, we affirm the district court's entry of summary judgment in the defendants' favor.

**AFFIRMED.**

16